IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:18-CR-298 |
| v. | ) | |
| | ) | Counts 1-5: 18 U.S.C. § 1341 |
| COREY CADET DUKES, | ) | (Mail Fraud) |
| | ) | Counts 6-8: 18 U.S.C. § 1343 |
| Defendant. | ) | (Wire Fraud) |
| | ) | |
| | ) | Forfeiture Notice |
| | ) | |

INDICTMENT

August 2018 TERM – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.      Defendant COREY CADET DUKES (hereafter "DUKES" or "the defendant")
resided in Leesburg, Virginia or Alexandria, Virginia, located within the Eastern District of
Virginia.

2.      From approximately October 11, 2012 though approximately August 11, 2017,
DUKES was employed full-time at Paragon Systems ("Paragon") providing security services at a
U.S. Government facility in Washington, D.C. as a supervisory security guard, and was paid an
annual salary beginning at about $53,000 and increasing to approximately $70,000.

3.      From approximately May 5, 2013 through approximately August 22, 2017,
DUKES was also employed full-time by the U.S. Department of State (the "State Department"),
with a duty station first in Lorton, Virginia, then in Springfield, Virginia, in the Eastern District

1

of Virginia, and was paid an annual salary beginning at approximately $62,467 and increasing to approximately $97,956.

4.      For the tax calendar year 2013, DUKES reported adjusted gross income of $103,527. For the tax calendar year 2014, DUKES reported adjusted gross income of $133,282. For the tax calendar year 2015, DUKES reported adjusted gross income of $144,902. For the tax calendar year 2016, DUKES had W-2 wages of $155,446.

5.      The U.S. Department of Education is an executive department of the United States Government with the primary responsibility of administering various educational financial assistance programs throughout the United States. Among the educational financial assistance programs administered by the Department are federally guaranteed student loan programs which require a borrower to repay awarded educational loans (collectively referred to herein as "federal student aid").

6.      A borrower may apply for a Total and Permanent Disability (hereafter "TPD") discharge of certain qualified federal student aid debt through a U.S. Department of Education program executed, in part, by Nelnet, the TPD Servicer (hereafter "Nelnet"), with offices located in Nebraska. Nelnet also used a service provider located in Austin, Texas, to send correspondence through the U.S. mail.

7.      To be approved for such a discharge, a borrower must demonstrate that he or she is totally and permanently disabled. A borrower who is not rated or was rated with less than 100% disability and does not have an individual unemployability rating from the U.S. Department of Veterans Affairs ("the VA") could submit a physician's certification as part of his TPD application. Once the TPD application was conditionally approved, this applicant would then be placed under a three year income-monitoring period to receive a final discharge. At all

2

times relevant to the indictment, DUKES was rated at less than 100% disabled and he was not determined to be individually unemployable by the VA.

8.  DUKES submitted the first of several discharge applications to obtain a TPD discharge of his student loans on or about September 13, 2012 by providing a physician's certification that he was totally and permanently disabled. DUKES submitted a physician's certification stating that DUKES was impaired from engaging in "substantial gainful activity" due to "migraine headaches," specifically being disabled when the migraines "flare[]" or are "triggered."

9.  Beginning on or about May 23, 2013, Nelnet, in letters sent via U.S. Mail to DUKES in Leesburg, Virginia, and in Alexandria, Virginia, informed DUKES that the discharged loans would be reinstated if he did not meet certain requirements during a post-discharge monitoring period that was effective for a three-year period beginning on May 14, 2013, the date DUKES' debt was discharged.  The letters told DUKES that he would be notified of his obligation to repay if a discharged loan was reinstated. The letters also informed DUKES that he must:

> a)  not have annual employment earnings that exceed the Federal Poverty Guideline amount for a family of two in his state, regardless of his actual family size;
>
> b)  promptly notify the U.S. Department of Education if his annual earnings exceeded the Federal Poverty Guideline established by the U.S. Health and Human Services or if his address or telephone number changed;
>
> c)  promptly respond if asked to provide the U.S. Department of Education with documentation of his annual earnings.

10.    In letters sent via U.S. Mail from Nelnet to DUKES, the defendant was informed that the Federal Poverty Guideline amount for a family of two in Virginia was as follows: $15,730 for 2014; $15,930 for 2015; and $16,020 for 2016.

11.    In or around January 2015, Nelnet reinstated DUKES' student loans due to his failure to provide proof of income during the monitoring period.

12.    From in or around 2013 through in or around 2016, DUKES placed multiple interstate telephone calls to Nelnet to inquire about the following topics: the status of his discharged loans; why his loans had been reinstated; how to have his student loans returned to discharged status; how to discharge additional student loans; and the income verification requirement.

13.    In or around February 2015, after a phone call with Nelnet, DUKES caused the reinstatement of his previous loan discharge by electronically submitting a new TPD application via email, certifying that he had a "total and permanent disability" and that he was unable to "engage in any substantial gainful activity." Nelnet relied on this application to reinstate DUKES' TPD discharge and returned him to the three-year post-discharge monitoring period that he had been subject to before, that is the period May 14, 2013 through May 13, 2016, as if it had not been interrupted.

14.    On or about June 26, 2015, Nelnet sent DUKES a post-discharge monitoring letter via U.S. mail to request documentation of annual earnings from employment for the period May 14, 2013 through December 31, 2014. On or about August 25, 2015, Nelnet mailed a duplicate request to DUKES.

15.    Again, DUKES failed to provide the requested income documentation to Nelnet.

4

16.     On or about June 2, 2016, Nelnet mailed DUKES a letter to inform him that his student loan debt was reinstated because he had failed to provide the requested documentation of his annual earnings from employment for the required three-year post-discharge monitoring period of May 14, 2013 to May 13, 2016.

17.     On or about September 14, 2016, DUKES emailed Nelnet a PDF letter attachment with his signature at the bottom. The letter, dated September 13, 2016, stated, in part: "This letter is to confirm that nothing has changed with my disabilities and/or my income since I originally began my monitoring period May 14th 2013 – May 13th 2016." DUKES also requested to have all of his loans "completely discharged as they were once before." DUKES added: "I believe there was error in having my loans reinstated, as nothing has changed on my part."

18.     On or about October 7, 2016, in a telephone conversation, a Nelnet representative informed DUKES that his letter sent on or about September 14, 2016, did not directly state whether he had any income and was deficient. The representative advised DUKES he could provide a self-certification of income for the monitoring period.

19.     On or about October 13, 2016, DUKES called Nelnet again, and was given substantially the same explanation, and advised that his next student loan repayment was currently due on October 28, 2016.

20.     On or about October 13, 2016, DUKES emailed Nelnet from his personal email address a PDF letter dated the same day, stating "I, Corey Dukes did not have any earned income from May 1, 2013 – October 13, 2016." In truth and in fact, at the time DUKES made this statement to Nelnet, he had been working two full-time jobs since approximately May 2013. During the income monitoring period of May 14, 2013 to May 13, 2016, DUKES had earned income of approximately $331,120.49.

5

21.    On or about October 19, 2016, Nelnet notified DUKES via letter his student loans were discharged and he was no longer subject to further monitoring.  DUKES had approximately 18 student loans discharged.

22.    On or about October 19, 2016, the U.S. Department of Education forgave approximately $205,687.74 in Federal Student Loans for DUKES based on his false representations and concealment of material facts.

23.    Rather than pay his monthly student loan obligations, DUKES used his income to fund a lavish lifestyle.

Counts 1-5

(Mail Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

24.     The allegations set forth in paragraphs 1 through 23 of this Indictment are realleged and incorporated as if set forth herein.

25.     Beginning in or about February 2015 and continuing through at least in or around October 2016, in the Eastern District of Virginia and elsewhere, Defendant COREY CADET DUKES, devised a scheme and artifice to defraud Nelnet, the Department of Education, and other loan servicers, and to obtain money and property from them, and to avoid substantial monthly loan repayments due, by means of materially false and fraudulent pretenses, representations, and promises. That is, the defendant knowingly falsely certified that he had a "total and permanent disability" and that he was unable to "engage in any substantial gainful activity;" concealed material facts concerning his annual income; and affirmatively misrepresented that he had no earned income.

26.     On or about the dates set forth in the table below, within the Eastern District of Virginia and elsewhere, and for the purpose of executing such scheme and artifice to defraud and attempting to execute such scheme, the defendant did knowingly cause to be to be placed in a post office or authorized depository for mail matter, the items described in the table below to be delivered by the U.S. Postal Service:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 1 | 6/26/2015 | Post-discharge income monitoring letter requesting income documentation sent from Nelnet in Austin, Texas to the defendant in Alexandria, Virginia. |

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 2 | 2/18/2016 | Letter with poverty guidelines for 2016 sent from Nelnet in Austin, Texas to the defendant in Alexandria, Virginia. |
| 3 | 2/20/2016 | Post-discharge income monitoring letter requesting income documentation sent from Nelnet in Austin, Texas to the defendant in Alexandria, Virginia. |
| 4 | 6/2/2016 | Student loan reinstatement letter sent from Nelnet in Austin, Texas to the defendant in Alexandria, Virginia. |
| 5 | 10/19/2016 | Student loan discharge letter sent from Nelnet in Austin, Texas to the defendant in Alexandria, Virginia. |

(All in violation of Title 18, United States Code, Section 1341.)

<u>Counts 6-8</u>

(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

27.     The allegations set forth in paragraphs 1 through 23 and paragraph 25 of this

Indictment are realleged and incorporated as if set forth herein.

28.     On or about the dates set forth in the table below, within the Eastern District of

Virginia and elsewhere, and for the purpose of executing such scheme and artifice to defraud and

attempting to execute such scheme, the defendant did knowingly transmit and cause to be

transmitted writings, signs, signals, and sounds by means of wire communications in interstate

and foreign commerce, as more particularly described below:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 6 | 2/24/2015 | Application for TPD discharge sent via email from corey.dukes@yahoo.com in Alexandria, Virginia to Nelnet in Lincoln, Nebraska. |
| 7 | 9/14/2016 | Letter in PDF format concerning disabilities and income emailed from the defendant in Alexandria, Virginia to Nelnet in Lincoln, Nebraska. |
| 8 | 10/13/2016 | Letter in PDF format stating the defendant had no earned income from May 1, 2013 – October 13, 2016, sent via email from corey.dukes@yahoo.com in Alexandria, Virginia to Nelnet in Lincoln, Nebraska. |

(All in violation of Title 18, United States Code, Sections 1343.)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT THE PROPERTY DESCRIBED BELOW IS SUBJECT TO FOFEITURE:

1.    Pursuant to Federal Rule of Criminal Procedure 32.2(a), Defendant COREY CADET DUKES is hereby notified that, if convicted of an offense alleged in Counts 1 through 8 of this Indictment, the Defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his interest in any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of the Counts of conviction. If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute property, including but not limited to the following:

      a.   A sum of money equal to at least $205,687.74 in United States currency,

         representing the amount of proceeds obtained as a result of the offenses.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL

*Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
FOREPERSON

G. Zachary Terwilliger
United States Attorney

By: _____
Kimberly R. Pedersen
Assistant United States Attorney
Russell L. Carlberg
Special Assistant United States Attorney LT